UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION
Case No. _____

| | |
|---|---|
| XZAVIER WILLIAMS,   )<br>                                        )<br>              Plaintiff,   )<br>                                        )     **COMPLAINT**<br>vs.                                  )<br>                                        )     **JURY TRIAL DEMANDED**<br>TOWN OF McCOLL,       )<br>                                        )<br>              Defendant(s). )<br>_____ ) | |

1. This action is brought to remedy violations Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§2000e et seq. ("Title VII"), discrimination based on race and retaliation. This is also an action to remedy discrimination and retaliation in violation of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101, 12112(b), as amended by the Americans with Disabilities Act Amendments Act ("ADAAA"), Pub. L. No. 110-325, §8; 122 Stat. 3553 (Sept. 25, 2008), discrimination based on disability and retaliation.

2. Compensatory and punitive damages are both sought and liquidated damages pursuant to 29 U.S.C. §626(b) and pursuant to 42 U.S.C. § 1981a(a)(1). Plaintiff also seeks injunctive and other equitable relief, compensatory and punitive damages, and attorney's fees pursuant to 42 U.S.C. §§ 1981a(a)(1), 2000e-5(g)(1), (k). Furthermore, Plaintiff seeks attorney's fees for the bringing of this action pursuant

1

to the 1976 Civil Rights Attorney's Fees Act and other appropriate attorney fees statutes authorized by law.

3. Defendant, through City Administration by the late Mayor George Garner and Council, hired Plaintiff as Chief of Police for the Town of McColl; and then proceeded to harass, micro-manage, discipline and terminate Plaintiff in a manner that discriminated against Plaintiff based on race and disability, that failed to accommodate Plaintiff under ADA, that retaliated against Plaintiff in response to his complaints about his treatment.

4. Defendant's actions damaged Plaintiff personally and professionally causing financial, emotional and professional harm. As a result of Defendant's conduct, Plaintiff suffered offenses and damages as set forth herein.

5. Plaintiff, an African American male former employee of Defendant, is a citizen of the United States and a resident of Dillon, South Carolina.

6. Defendant, Town of McColl, upon information and belief, is a municipality within Marlboro County South Carolina and organized and existing under the laws of the State of South Carolina, operating government offices and duties within McColl to include city management, maintenance and supervision of McColl employees and police officers.

7. On information and belief, at all times relevant to the allegations in this complaint, Town of McColl was authorized to and did waive any state-law immunity from civil liability under state-law causes of action by purchasing liability insurance, either by contract with an insurance company or by participation in an insurance risk pool that covers the claims raised in this lawsuit.

8. This Court has jurisdiction of this matter under 28 U.S.C. § 1331 and 1343(a)(3),(4).

9. Pursuant to 28 U.S.C. §1391, venue is properly laid in this district because Defendant's conduct substantial, systematic, and continuous activity in this district and is subject to personal jurisdiction in this district and because all of the acts underlying this lawsuit occurred in this district.

10. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Title VII 42 U.S.C.§ 2000e(b).

11. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C. §12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, U.S.C. §§ 2000e(g) and (h).At all relevant times, Defendant Employer has been a covered entity under Section 101(2) of the ADA, 42 USC §12111(2).

12. On January 13, 2025, The US Equal Employment Opportunity Community Commission issued Plaintiff a Notice of Right to Sue regarding EEOC Charge 436-2024-01314, with respect to his corresponding charge of discrimination.

13. Plaintiff has complied fully with all prerequisites to jurisdiction in this Court under Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act of 1990, as amended.

14. Plaintiff, Xzavier Williams was hired as Chief of Police for the Town of McColl in November 2022 and was performing satisfactorily for Defendant.

15. While on medical leave, Plaintiff's supervisor, the Mayor, tried to discipline Plaintiff and force Plaintiff's resignation.

16. Defendant's Mayor denied Plaintiff's request for a reasonable accommodation of extended leave due to medical reasons, because he still contacted Plaintiff for work related reasons while on leave.

17. Defendant employees or agents came to Plaintiff's home while on medical leave, to intimidate or harass Plaintiff and his family regarding Plaintiff's use of a police issued vehicle.

18. Defendant employees or agents through mayor and town council demoted Plaintiff from Police Chief to Corporal on June 5, 2023.

19. Defendant employees or agents through mayor and town council terminated Plaintiff on June 13, 2023 without a legitimate non discriminatory reason for discharge.

20. Plaintiff is aware of police officers of a different race or without an actual or perceived disability, who were not placed under heightened scrutiny at work, not questioned at their homes while on medical leave, not demoted or terminated without good cause.

21. Plaintiff is also aware of other African American officers with the McColl Police Department who were terminated by Defendant's Mayor without legitimate non discriminatory business reason.

22. Plaintiff believes that the Mayor treated him differently based on his race because the Mayor perceived the African American employees as officers who should obey his requests to give unlawful preferential treatment to citizens close to the Mayor.

23. When Plaintiff objected to the Mayor's requests to retaliate against officers who were non compliant or in positions that the Mayor wanted filled with his Caucasian officers of choice, Plaintiff was forced to work with little to no staff and then

blamed and/or punished for issues surrounding a lack of coverage. That lack of coverage was a condition created by the Mayor to pay less money to law enforcement, which had a disparate impact on African American employees of Defendant's law enforcement.

24. Defendant council and administration knew, or should have known, that Plaintiff was working in an understaffed department with lack of coverage and this was with a lack of regard to Plaintiff's safety and without proper payment of overtime.

25. Plaintiff is informed and believed that at the time, the Mayor sought to remove Plaintiff in favor of hiring one of the Mayor's family members as Chief of Police.

26. Examples of Plaintiff being subjected to unsafe or abnormal work conditions by the Mayor and then being blamed for any issues by the Mayor include:

   A. While on duty, Mayor Garner instructed Plaintiff to take one or two police vehicles outside the town limits to Bennettsville, SC so they could be worked on and was then blamed for speeding in response to a call, although he was the only certified officer on duty and was outside of the town limits at the time of the call and was traveling in a manner as trained by the police academy.

   B. Plaintiff was assigned two uncertified officers working and was then blamed for not being able to respond to work calls in a timely manner, although he was the only certified officer on duty.

   C. Mayor tried to interfere with Plaintiff's hiring of certified officers like Bradley Bellamy by trying to micro-manage discipline. When Plaintiff refused to issue unwarranted discipline to the certified officer because the

|   |   |   |
|---|---|---|
|   |   | officer would not adhere to the Mayor's request for preferential treatment, the Mayor used this as a reason for discipline. The officer ultimately resigned due to coercion by Mayor to drop charges of family members. |
|   | D. | Plaintiff was required to work as the only certified officer employed, at times, Monday - Friday, with no night shift pay. Plaintiff often worked 15 plus hours per day and was only paid for 8 hours. |
|   | E. | If Plaintiff did not respond to a work call such as a shooting, although Marlboro County Sheriff's Office deputies were dispatched to the scene, through an agreement with the Town of McColl, Defendant would still discipline Plaintiff for not being present even when he was not scheduled to work. |
|   | F. | The Mayor left the town unsecure by firing Plaintiff's selected officers or leaving Plaintiff to work by himself, and then blaming Plaintiff for not having a duty schedule when he was the only certified officer employed at the time. |
| 20. |   | Plaintiff informed Mayor Protem Brian Blue of his feelings of working in a hostile work environment; and the only response Plaintiff received was demotion and termination. |
| 21. |   | Plaintiff ultimately began to miss work in June 2023, due to stress related to his work conditions. He followed the proper call out procedures regarding his absences in June 2023 and informed Defendant, through Mayor Protem and Brian Blue, that the absence was related to hostile work environment. |

22. By the time Plaintiff missed work in June 2023, the majority of Plaintiff's staff had been fired, Plaintiff had been stripped of chief duties, Plaintiff was not allowed to hire anyone, and demoted from chief to corporal.

23. On June 5, 2023, Defendant tried to force Plaintiff to sign the demotion letter and a policy manual that had never been presented to him before that day.

24. Plaintiff informed Defendant town council on June 13, 2023 of his hostile work environment and how Plaintiff was out on medical leave, with medical documentation provided, and that the Mayor terminated Plaintiff. Council rescinded the termination publicly and went into executive session.

25. Defendant council then made a motion to accept Plaintiff's resignation that Plaintiff never gave.

26. Conduct complained of in the preceding paragraphs was discriminatory and/or retaliatory conduct toward Plaintiff as the conduct was engaged in for the purpose of removing Plaintiff from his position in favor of Caucasian candidates being hired to replace Plaintiff and staff the police department.

27. Plaintiff was forced to work in unsafe work conditions, understaffed and underpaid with respect to overtime and work beyond 8 hours, was subjected to discipline for work circumstances beyond his control, questioned and harassed while on medical leave, undermined as police chief, demoted and terminated. Similarly situated officers outside of Plaintiff's protected class did not receive this treatment.

28. Defendant was on notice, or should have been on notice, of the actions of its subordinates or employees, especially due to Plaintiff's complaints and grievance

28. requests and appeals directly to council; and all failed to correct such discriminatory and retaliatory actions of its employees.

29. Defendant's acts of discrimination and retaliation within Defendant's employment practices and work environment were performed with malice and reckless indifference to Plaintiff's protected civil rights.

30. Defendant's facially neutral policies and procedures were applied in a discriminatory and retaliatory manner and in a manner which had a disparate impact on Plaintiff's Civil Rights.

31. Defendant's conduct of forcing Plaintiff's removal as police chief, and misrepresenting the manner of Plaintiff's separation was performed with malice and reckless indifference to Plaintiff's reputation and economic interests.

32. As a result of the above referenced conduct of Defendant, Plaintiff has suffered economic loss, impaired reputation, financial and emotional distress, as well as attorney fees and costs of litigation.

## COUNT I
## (TITLE VII – RACE DISCRIMINATION)

33. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

32. Plaintiff, an African American male, was chosen by Defendant's selection process as the chief of police, and therefore was deemed a satisfactory candidate for employment. Plaintiff performed satisfactorily since selection.

33. Defendant through council, administration, employees or agents, then subjected Plaintiff to a hostile work environment and an unsafe, understaffed work

environment causing Plaintiff to work many unpaid hours, face unreasonable discipline, and suffer demotion and termination.

34. Defendant's reasons for micro-management, harassment, discipline, demotion and termination were pretext as reasons given were either unreasonable, unjustified or false.

35. Defendant engaged in the conduct complained of for the purpose of replacing Plaintiff with favored officers of different race. Plaintiff was replaced by a Caucasian employee after termination who was hired as police chief of McColl in June 2023.

36. The foregoing actions of Defendant and its representatives discriminated and retaliated against Plaintiff on the basis of race and protected activity in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2.

37. Plaintiff has suffered injury, including immediate and irreparable injury to include economic loss, impaired reputation, financial and emotional distress, as well as attorney fees and costs of litigation, as a direct and proximate result of the Defendant's violation of all said rights as alleged herein.

## COUNT II
## (VIOLATION OF ADA)

38. Plaintiff repeats and realleges each and every allegation contained in preceding paragraphs of this Complaint.

39. Plaintiff is a member of a protected class as a person who was living with a disabling condition and/or a person regarded as disabled by his employer with Defendant having a record of Plaintiff's medical leave due to hostile work environment which affected his ability to work.

40. Plaintiff was performing satisfactorily, and was not under the threat of termination before Defendant decided to harass Plaintiff with respect to his medical leave of absence.

41. While Plaintiff was on medical leave for a disabling condition, Defendant harassed Plaintiff and his family at home, attempted to discipline Plaintiff and failed to reasonably accommodate Plaintiff on medical leave due to hostile work environment which affected his ability to work for Defendant. Defendant disciplined, demoted and terminated Plaintiff in response to his complaints and in furtherance of Defendant's desire to discriminate against Plaintiff.

42. Defendant's actions and practices described above also constitute unlawful discrimination under 42 U.S.C. § 12182(b)(1)(A) and § 12182(b)(2)(A).

43. Defendant perceived Plaintiff as disabled and/or denied Plaintiff a reasonable accommodation of medical leave of absence knowing that Plaintiff requested medical leave due to hostile work environment.

44. Plaintiff has suffered injury, including immediate and irreparable injury to include economic loss, impaired reputation, financial and emotional distress, as well as attorney fees and costs of litigation, as a direct and proximate result of the Defendant's violation of all said rights as alleged herein.

**WHEREFORE**, Plaintiff respectfully prays that this Court enter a judgment:

1. Declaring that the acts and practices complained of are in violation of applicable state and federal laws;

2. Enjoining and permanently restraining these violations of applicable state and federal laws;

3. Directing Defendant to take such affirmative action as is necessary to ensure that the effects of these unlawful employment practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

4. Directing Defendant to place Plaintiff in the position he would have occupied but for Defendant's discriminatory and retaliatory treatment of him, and make him whole for all earnings he would have received but for Defendant's discriminatory and retaliatory treatment, including, but not limited to, wages, pension and other lost benefits;

5. Directing Defendant to pay Plaintiff attorney fees, costs, damages for emotional and financial distress, mental anguish and humiliation; and other compensatory and punitive damages allowable under 42 U.S.C. §§ 1981a(a)(1), 2000e-5(g)(1), (k) and all applicable state and federal laws in the amount to be determined by a jury;

6. Awarding Plaintiff such other and further relief as this Court deems just and proper.

                                                                   WUKELA LAW FIRM

                                    By:    s/ Pheobe A. Clark
                                          **Pheobe A. Clark**
                                          Federal ID No. 9888
                                          Post Office Box 13057
                                          Florence, SC  29504-3057
                                          Phone: (843) 669-5634
April 10, 2025                          Fax:  (843) 669-5150